FILED

2026 MAY 26 PM 1:42

Adrian Andrew Grimaldo
AAGrimaldo@gmail.com
427 3rd Street
Fillmore, CA 93015
(805) 921-6927

**Plaintiff in Pro Per**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN ANDREW GRIMALDO,<br><br>Plaintiff,<br><br>v.<br><br>DEPUTY CAMERON KNOX (Badge No. 5064); SENIOR DEPUTY JEFF OSWALD (Badge No. 3365); OFFICER "DOE 1"; OFFICER "DOE 2"; COUNTY OF VENTURA; and DOES 3–10, inclusive,<br><br>Defendants. | **Case No. 2:26-cv-02299-JFW-AJR**<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**<br><br>(1) Unlawful Continued Detention (4th & 14th Amends.)<br>(2) Excessive Force (4th Amend.)<br>(3) Unreasonable Search & Seizure (4th Amend.)<br>(4) First Amendment Retaliation<br>(5) Municipal Liability (Monell)<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 to redress Defendants' violations of Plaintiff Adrian Andrew Grimaldo's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution arising out of his misidentification, prolonged unlawful detention, excessive force, unreasonable search, property deprivation, and retaliatory recording interference at the hands of Ventura County Sheriff's personnel on March 5, 2024.

2. Plaintiff acknowledges that the initial traffic stop and field arrest were supported by an apparent dispatch "hit" on an out-of-county warrant for a different individual. The constitutional violations alleged in this First Amended Complaint arise from the conduct of Defendants thereafter — specifically, the use of excessive force during the arrest and transport, the unlawful search of Plaintiff's vehicle and wallet, the interference with Plaintiff's recording of the encounter, the booking deputies' deliberate bypass of the Ventura County Pretrial Detention Facility's identity-verification safeguards, and the County of Ventura's ongoing failure to update law-enforcement teletype networks to reflect Plaintiff's resolved misidentification.

3. These acts and omissions deprived Plaintiff of clearly established constitutional rights, caused cognizable physical, property, and dignitary harm, and continue to subject him to the threat of erroneous re-arrest.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), because they arise under the Constitution and laws of the United States and seek redress for the deprivation, under color of state law, of rights secured by the Constitution.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district, including in Fillmore, California and at the Ventura County Pretrial Detention Facility.

6. Plaintiff brings no state-law claims in this First Amended Complaint.

## III. PARTIES

7. Plaintiff Adrian Andrew Grimaldo is, and at all relevant times was, a resident of Ventura County, California.

8. Defendant DEPUTY CAMERON KNOX (Badge No. 5064) is, and at all relevant times was, a Deputy Sheriff employed by the Ventura County Sheriff's Office. At all relevant times he acted under color of state law and within the course and scope of his employment. He is sued in his individual capacity.

9. Defendant SENIOR DEPUTY JEFF OSWALD (Badge No. 3365) is, and at all relevant times was, a Senior Deputy Sheriff employed by the Ventura County Sheriff's Office. At all relevant times he acted under color of state law and within the course and scope of his employment. He is sued in his individual capacity.

10. Defendants OFFICER "DOE 1" and OFFICER "DOE 2" are, and at all relevant times were, peace officers employed by the Ventura County Sheriff's Office whose true names and capacities are presently unknown to Plaintiff. Plaintiff alleges on information and belief that Doe 1 personally applied the handcuffs to Plaintiff, conducted the search of Plaintiff's vehicle and wallet, and disabled Plaintiff's cellular phone; and that Doe 2 personally caused the patrol-vehicle door to strike Plaintiff during transport. Plaintiff will amend this Complaint to state their true names and capacities when

ascertained through discovery.

11. Defendant COUNTY OF VENTURA is a political subdivision of the State of California and the public entity responsible for the policies, customs, practices, training, supervision, and discipline of the Ventura County Sheriff's Office.

12. DOES 3 through 10 are additional unidentified peace officers, supervisors, policymakers, or custodians employed by the Ventura County Sheriff's Office whose acts or omissions contributed to the violations alleged herein, and whose true names and capacities will be added by amendment when ascertained.

## IV. FACTUAL ALLEGATIONS

### A. The March 5, 2024 Stop and Arrest

13. On or about March 5, 2024, Plaintiff was lawfully traveling in his vehicle near the intersection of Main Street and Saratoga Street in Fillmore, California.

14. Plaintiff was stopped by Defendant Knox, who initiated the traffic stop in his marked patrol vehicle.

15. During or shortly after the stop, Knox or another deputy queried the California Law Enforcement Telecommunications System ("CLETS") and was informed of an outstanding warrant matching a name similar to Plaintiff's.

16. The warrant in question was not for Plaintiff but for a different individual whose name, date of birth, and physical descriptors differed materially from Plaintiff's.

17. The identifying information on the warrant differed materially from Plaintiff's actual identity. The warrant from Siskiyou County was issued for an individual with a different middle name ("Michael" rather than "Andrew"). Furthermore, the suspect in the Yreka Police Department's field photograph did not match Plaintiff's race or body type, a fact that should have been immediately apparent to the arresting deputies.

18. Defendant Doe 1 placed Plaintiff in handcuffs. The handcuffs were applied with such excessive tightness that they caused Plaintiff substantial pain, bruising, and lasting injury to his wrists.

19. Plaintiff complained that the handcuffs were too tight. Doe 1 refused to loosen them or ignored Plaintiff's complaints despite having no legitimate law-enforcement reason to maintain the excessive pressure.

**B. Transport and Door-Slam Incidents**

20. After being placed under arrest and handcuffed, Plaintiff was loaded into a patrol vehicle for transport to the Ventura County Pretrial Detention Facility.

21. During the loading of Plaintiff into the patrol vehicle, Defendant Doe 2 caused the patrol-vehicle door to strike Plaintiff with substantial force, causing Plaintiff pain and injury.

22. Plaintiff was already restrained and not resisting at the time. There was no legitimate law-enforcement justification for the use of force by Doe 2.

23. During Plaintiff's detention at the facility, he was moved through several holding cells. During these transfers, the escorting officer repeatedly slammed the heavy cell doors at full force directly into Plaintiff's face. This unprovoked force caused Plaintiff to suffer a severe migraine that lasted for weeks and severely impacted his ability to take a Navy Officer's exam the following day.

## C. Unlawful Search, Property Deprivation, and Recording Interference

24. At the scene of the arrest, Defendant Doe 1 conducted a search of Plaintiff's vehicle. On information and belief, this search was not supported by probable cause, consent, or any other lawful basis, and exceeded the scope of any permissible search incident to arrest.

25. A second officer arrived at the scene of the traffic stop and conducted a search of Plaintiff's vehicle and personal belongings. Following the search of Plaintiff's wallet, several hundred dollars in cash went missing. When Plaintiff's property was returned upon his release, the jail property receipt (Tracer #9057960) recorded only $27.00. The remaining cash was unlawfully seized by the deputies at the scene and never accounted for.

26. On information and belief, Defendant Doe 1 intentionally turned off Plaintiff's cellular phone to halt a live recording of the encounter, interfering with Plaintiff's right to document law-enforcement activity.

27. Following Defendant Doe 1's non-consensual search of Plaintiff's wallet, several hundred dollars in cash were found to be missing, unaccounted for, and unlawfully seized without due process.

## D. Booking and Failure to Verify Identity

28. Plaintiff was transported to and booked into the Ventura County Pretrial Detention Facility. Defendant Senior Deputy Jeff Oswald was the booking deputy responsible for Plaintiff's intake processing.

29. The Ventura County Pretrial Detention Facility uses, and at all relevant times used, the Automated Fingerprint Identification System ("AFIS") and/or Live Scan fingerprint comparison, digital photograph comparison, date-of-birth verification, and physical-descriptor comparison to verify the identity of arrestees against the records of the persons named in warrants and to detect misidentification. These identification safeguards exist specifically to detect and prevent the continued detention of misidentified individuals.

30. During Plaintiff's booking, AFIS, photograph, date-of-birth, and physical-descriptor comparators were available to Defendant Oswald and would have demonstrated that Plaintiff was not the individual identified in the warrant.

31. On information and belief, the automated identity safeguards flagged a distinct discrepancy regarding Plaintiff's identity and the warrant parameters.

32. On information and belief, Defendant Oswald explicitly instructed Defendant Knox to manually bypass the booking system's automated identity safeguards. Rather than conducting a lawful identity verification or investigating the discrepancies, Defendant Oswald overrode the available identity-verification safeguards, and instead manually processed Plaintiff's booking as if Plaintiff were the warrant subject.

33. Despite the obvious discrepancies in the warrant parameters — including the different middle name and different physical demographics — the deputies forced Plaintiff into the booking system. Arresting Deputy Knox sat behind the computer for hours and asked several other officers how to force Plaintiff's processing into the system because the name did not align with the warrant. Instead

of immediately halting the booking, the identity safeguards were bypassed, and Plaintiff was processed, X-rayed without protection, and placed in holding cells.

34. Plaintiff verbally protested his misidentification at the time of booking, but Defendant Oswald disregarded those protests and continued the booking process.

35. Plaintiff remained completely cooperative throughout the unlawful detention. As Plaintiff was finally being escorted to the exit window upon his release, the same officer who had repeatedly slammed the cell doors on him stopped him, got within inches of Plaintiff's face, and aggressively asked, "Do you have a problem with me!" Plaintiff remained compliant and responded, "No sir, I hope you have a nice day."

36. As a direct and proximate result of Defendants' failure to use the available identity-verification safeguards and the subsequent manual override, Plaintiff continued to be detained on the misidentified warrant when reasonably-available information demonstrated that Plaintiff was not the warrant subject.

**E. Detention, Release, and Ongoing CLETS Failure**

37. Plaintiff remained in custody for a period of approximately 6.5 hours (from approximately 10:00 AM to 4:24 PM) on March 5, 2024, before the misidentification was fully processed and Plaintiff was released.

38. During the detention, Senior Deputy Oswald initiated an investigation, requested case records and a field photograph from the Yreka Police Department, and confirmed that the actual suspect's photograph, race, and body type obviously did not match Plaintiff. Senior Deputy Oswald subsequently issued a "Notice of Warrant Misidentification" confirming Plaintiff was not the subject

of the warrant based on photograph comparisons and consultation with the issuing agency.

39. Following Plaintiff's release, the County of Ventura failed to promptly update the California Law Enforcement Telecommunications System (CLETS) and other law-enforcement teletype networks to reflect the resolved misidentification, with the result that Plaintiff remained at risk of being re-arrested by any officer running his name through the system.

40. Plaintiff sought clearance and correction of these records repeatedly between March 5, 2024 and September 18, 2024 — a period of more than six months — during which the unresolved electronic-record status continued to expose him to the threat of erroneous re-arrest.

41. Plaintiff was forced to make countless phone calls and send emails for over six months to ensure his record was cleared. Between March and September 2024, Plaintiff corresponded with Yreka Police Department Records Supervisor Janene Kincade and Lt. Ray Boutin, who confirmed that Ventura County had failed to properly update the teletype system or notify them of the misidentification. Because Ventura County records personnel did the bare minimum upon his release, the erroneous charges were not completely removed from Plaintiff's RAP sheet until September 18, 2024.

## V. CLAIMS FOR RELIEF

### COUNT I

### Unlawful Continued Detention in Violation of the Fourth and Fourteenth Amendments

### (42 U.S.C. § 1983 — Against Defendants Oswald and Knox)

42. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

43. The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits unreasonable seizures, including the continued detention of an individual after readily-available identifying information demonstrates that the basis for the seizure no longer exists. The Fourteenth Amendment Due Process Clause separately prohibits the continued detention of a person on a warrant when reasonably-available identifying information demonstrates that the detainee is not the person named in the warrant.

44. At the time of Plaintiff's booking, AFIS fingerprint records, photograph comparisons, date-of-birth verification, and physical-descriptor comparators were available to Defendants and would have demonstrated that Plaintiff was not the individual identified in the warrant.

45. Defendant Oswald instructed Defendant Knox to manually bypass the booking system's automated identity-verification safeguards. Defendants Oswald and Knox acted unreasonably, with deliberate indifference, or both, by bypassing or failing to use those identity-verification safeguards, overriding system alerts, and continuing to process Plaintiff's booking and detention as if he were the warrant subject — notwithstanding Plaintiff's verbal protests of misidentification.

46. As a direct and proximate result of Defendants' conduct, Plaintiff was detained without probable cause and deprived of liberty in violation of the Fourth and Fourteenth Amendments.

47. The constitutional principles set forth above were clearly established at the time of Plaintiff's March 5, 2024 booking. Any reasonable booking official in Defendants' position would have known that bypassing, ignoring, or overriding available identity-verification safeguards in the face of an arrestee's protests of misidentification violated clearly-established constitutional rights. Defendants are therefore not entitled to qualified immunity.

48. Plaintiff has suffered general and special damages in an amount to be proven at trial, including loss of liberty, mental and emotional distress, humiliation, and other harm.

**COUNT II**

**Excessive Force in Violation of the Fourth Amendment**

**(42 U.S.C. § 1983 — Against Defendants Doe 1 and Doe 2)**

49. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

50. The Fourth Amendment prohibits the use of excessive force by law-enforcement officers during the course of an arrest, investigatory stop, or other seizure.

51. Defendant Doe 1 used excessive and objectively unreasonable force by applying handcuffs to Plaintiff with crushing tightness, refusing to loosen them despite Plaintiff's complaints, and maintaining that excessive pressure when there was no legitimate law-enforcement justification for doing so.

52. Defendant Doe 2 used excessive and objectively unreasonable force by causing the patrol-vehicle door to strike Plaintiff with substantial force while Plaintiff was already restrained, compliant, and not resisting, when there was no legitimate law-enforcement justification for the use of force.

53. The conduct of Defendants Doe 1 and Doe 2 was objectively unreasonable in light of clearly-established law, and neither is entitled to qualified immunity.

54. As a direct and proximate result of Defendants Doe 1 and Doe 2's conduct, Plaintiff suffered physical injury, pain, mental and emotional distress, and other damages in an amount to be proven at trial.

**COUNT III**

**Unreasonable Search and Seizure in Violation of the Fourth Amendment**

**(42 U.S.C. § 1983 — Against Defendant Doe 1)**

55. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

56. The Fourth Amendment prohibits unreasonable searches and seizures of a person's vehicle or personal effects that are not supported by a warrant, probable cause, consent, or another recognized exception to the warrant requirement.

57. Defendant Doe 1 searched Plaintiff's vehicle and wallet without a warrant, without probable cause, without Plaintiff's consent, and beyond the scope of any permissible search incident to arrest or inventory search.

58. During this unlawful search, Defendant Doe 1 unlawfully seized several hundred dollars in cash from Plaintiff's wallet, permanently depriving Plaintiff of his property without due process of law.

59. Defendant Doe 1's conduct was objectively unreasonable in light of clearly-established law, and he is not entitled to qualified immunity.

60. As a direct and proximate result of Defendant Doe 1's unreasonable search and unlawful seizure, Plaintiff was deprived of his Fourth Amendment rights, suffered direct financial loss, and suffered

damages in an amount to be proven at trial.

**COUNT IV**

**First Amendment Retaliation and Interference with the Right to Record**

**(42 U.S.C. § 1983 — Against Defendant Doe 1)**

61. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

62. The First Amendment protects the right to record law-enforcement officers performing their duties in public. Retaliatory action designed to obstruct or extinguish the exercise of that right violates the First Amendment.

63. On information and belief, Defendant Doe 1 intentionally accessed Plaintiff's cellular phone and disabled it for the specific, unlawful purpose of halting a live recording of the law-enforcement encounter and concealing officer misconduct.

64. Defendant Doe 1's conduct was objectively unreasonable, was taken in retaliation against Plaintiff's exercise of a protected constitutional right, and violated clearly-established law. Defendant Doe 1 is not entitled to qualified immunity.

65. As a direct and proximate result of Defendant Doe 1's conduct, Plaintiff was deprived of his First Amendment rights and suffered distinct dignitary and emotional harm.

## COUNT V

**Municipal Liability under Monell v. Department of Social Services**

**(42 U.S.C. § 1983 — Against Defendant County of Ventura)**

66. Plaintiff incorporates by reference each and every preceding paragraph of this First Amended Complaint as though fully set forth herein.

67. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a local government entity may be held liable under 42 U.S.C. § 1983 where the entity's policy, custom, or practice causes a deprivation of constitutional rights, or where the entity's failure to train or supervise reflects deliberate indifference to such rights.

68. The County of Ventura, through the Ventura County Sheriff's Office, maintains a custom, practice, or policy of permitting booking personnel to bypass, ignore, or manually override the automated electronic identity-verification safeguards — including AFIS and Live Scan alerts, photograph comparison, date-of-birth verification, and physical-descriptor comparison — that exist specifically to detect and prevent the continued detention of misidentified arrestees.

69. The County of Ventura had actual notice of the unconstitutional booking-identification custom alleged herein no later than 2010, when a class action — Velasquez v. County of Ventura, No. 2:10-cv-10080-CBM-PJW (C.D. Cal.) — was filed against the County, the Ventura County Sheriff's Office, and then-Sheriff Bob Brooks alleging that VCSO booking personnel "failed and/or refused to use readily available technological means (such as fingerprint identification) to verify that people being booked were actually the people named in arrest warrants." On July 10, 2012, the United States District Court for the Central District of California granted final approval of a class settlement under which the County agreed to substantial injunctive relief, including a shift in VCSO's primary means of identifying suspects at the booking stage "from names and aliases to electronic fingerprint identification."

70. Notwithstanding the binding injunctive relief entered in Velasquez, the County of Ventura has continued to maintain a custom, practice, or policy of permitting booking personnel to bypass, ignore, or manually override the automated electronic identity-verification safeguards — including AFIS and Live Scan alerts, photograph comparison, date-of-birth verification, and physical-descriptor comparison — that exist specifically to detect and prevent the continued detention of misidentified arrestees. Plaintiff's March 5, 2024 booking, during which Defendant Oswald instructed Defendant Knox to manually bypass those safeguards in the face of an automated discrepancy flag and Plaintiff's verbal protest of misidentification, is the direct execution of that ongoing custom — a custom the County had been on formal notice to remediate for more than twelve years.

71. The County of Ventura further maintains a custom, practice, or policy of failing to promptly update the CLETS and other law-enforcement teletype networks to reflect resolved misidentifications, with the result that misidentified individuals remain exposed to prolonged, ongoing threats of erroneous re-arrest. Plaintiff's own six-month CLETS-clearance ordeal demonstrates the execution of this custom.

72. The County of Ventura's failure to maintain accurate and current records in law-enforcement teletype networks is part of a broader, documented pattern of records-management deficiency. In First Amendment Coalition v. Ayub, filed March 30, 2021 in Ventura County Superior Court, the County was sued for systematic and prolonged refusal to produce officer-misconduct and use-of-force records mandated for disclosure by Senate Bill 1421, after VCSO had improperly conditioned production on payment of unlawful fees and produced only a small fraction of the records over more than a year. The 2022–2023 Ventura County Grand Jury report titled "Deaths in Ventura County Detention and Jail Facilities," publicly released June 22, 2023, separately found that the Ventura County Sheriff's Office "provides inadequate information to the public concerning results of death investigations of detained persons." These documented patterns evidence an

institutional VCSO custom of failing to maintain, update, or release accurate records — a custom that, applied to the CLETS context, is the moving force behind the County's failure to update Plaintiff's CLETS record for over six months after his misidentification was resolved.

73. The County of Ventura has failed to adequately train and supervise its booking deputies and records personnel on the proper use of identity-verification safeguards — including AFIS / Live Scan fingerprint comparison, photographic comparison, date-of-birth verification, and physical-descriptor comparison — in the context of warrant identification, and on the prompt updating of teletype records following resolution of misidentifications.

74. The County of Ventura has been on actual and constructive notice of the clearly-established rights of misidentified arrestees through published Ninth Circuit decisions. Notwithstanding such notice, the County has continued to maintain the customs and practices alleged above, reflecting deliberate indifference to the rights of misidentified arrestees.

75. These customs, practices, and failures to train are so longstanding and well-settled that they carry the force of official County policy, and were the moving force behind the violation of Plaintiff's constitutional rights.

76. As a direct and proximate result of the County's customs, practices, and failures to train, Plaintiff suffered the constitutional violations alleged above and damages in an amount to be proven at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

a. Compensatory damages in an amount to be proven at trial, including damages for loss of liberty, physical injury, property deprivation, pain and suffering, mental and emotional distress, humiliation, and other harm;

b. Punitive damages against the individual Defendants (Knox, Oswald, Doe 1, and Doe 2) in their individual capacities, in an amount to be proven at trial;

c. Declaratory and injunctive relief, including an order directing Defendant County of Ventura to promptly update CLETS and related law-enforcement teletype networks to reflect Plaintiff's resolved misidentification and to implement corrective training and policy reforms regarding booking safeguard adherence;

d. Reasonable attorney's fees and costs as available under 42 U.S.C. § 1988 (in the event Plaintiff retains counsel) and recoverable costs of suit;

e. Pre- and post-judgment interest as allowed by law; and

f. Such other and further relief as this Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 21, 2026

Respectfully submitted,

Adrian Andrew Grimaldo
Plaintiff in Pro Per
427 3rd Street
Fillmore, CA 93015
(805) 921-6927
AAGrimaldo@gmail.com