FILED

CLERK, U.S. DISTRICT COURT

6/30/2026

CENTRAL DISTRICT OF CALIFORNIA

BY _____asi_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Adrian Andrew Grimaldo

427 3rd Street

Fillmore, CA 93015

Telephone: (805) 921-6927

Email: AAGrimaldo@gmail.com

Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN ANDREW GRIMALDO, | Case No. 2:26-cv-02299-JFW-AJR |
| Plaintiff, | SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 |
| v. | |
| DEPUTY CAMERON KNOX (Badge No. 5064); SENIOR DEPUTY JEFF OSWALD (Badge No. 3365); OFFICER "DOE 1"; OFFICER "DOE 2"; COUNTY OF VENTURA; and DOES 3-10, inclusive, | (1) Unlawful Continued Detention (4th & 14th Amends.) (2) Excessive Force (4th Amend.) (3) Unreasonable Search & Seizure (4th Amend.) (4) First Amendment Retaliation (5) Municipal Liability (Monell) |
| Defendants. | DEMAND FOR JURY TRIAL |

1

I.  INTRODUCTION

1.  This is a civil rights action brought under 42 U.S.C. § 1983 to redress Defendants' violations of Plaintiff Adrian Andrew Grimaldo's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution arising out of his misidentification, prolonged unlawful detention, excessive force, unreasonable search, property deprivation, and retaliatory recording interference at the hands of Ventura County Sheriff's personnel on March 5, 2024.

2.  Plaintiff acknowledges that the initial traffic stop and field arrest were supported by an apparent dispatch "hit" on an out-of-county warrant for a different individual. The constitutional violations alleged in this Second Amended Complaint arise from the conduct of Defendants thereafter — specifically, the use of excessive force during the arrest and transport, the unlawful search of Plaintiff's vehicle and wallet, the interference with Plaintiff's recording of the encounter, the booking deputies' deliberate bypass of the Ventura County Pretrial Detention Facility's identity-verification safeguards, and the County of Ventura's ongoing failure to update law-enforcement teletype networks to reflect Plaintiff's resolved misidentification.

3.  These acts and omissions deprived Plaintiff of clearly established constitutional rights, caused cognizable physical, property, and dignitary harm, and continue to subject him to the threat of erroneous re-arrest.

II.  JURISDICTION AND VENUE

4.  This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), because they arise under the Constitution

SECOND AMENDED COMPLAINT

and laws of the United States and seek redress for the deprivation, under color of state law, of rights secured by the Constitution.

5.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district, including in Fillmore, California and at the Ventura County Pretrial Detention Facility.

6.  Plaintiff brings no state-law claims in this Second Amended Complaint.

III.  PARTIES

7.  Plaintiff Adrian Andrew Grimaldo is, and at all relevant times was, a resident of Ventura County, California.

8.  Defendant DEPUTY CAMERON KNOX (Badge No. 5064) is, and at all relevant times was, a Deputy Sheriff employed by the Ventura County Sheriff's Office. At all relevant times he acted under color of state law and within the course and scope of his employment. He is sued in his individual capacity.

9.  Defendant SENIOR DEPUTY JEFF OSWALD (Badge No. 3365) is, and at all relevant times was, a Senior Deputy Sheriff employed by the Ventura County Sheriff's Office. At all relevant times he acted under color of state law and within the course and scope of his employment. He is sued in his individual capacity.

10. Defendants OFFICER "DOE 1" and OFFICER "DOE 2" are, and at all relevant times were, peace officers employed by the Ventura County Sheriff's Office whose true names and capacities are presently unknown to Plaintiff.

SECOND AMENDED COMPLAINT

Plaintiff alleges on information and belief that Doe 1 personally applied the handcuffs to Plaintiff, conducted the search of Plaintiff's vehicle and wallet, and disabled Plaintiff's cellular phone; and that Doe 2 personally caused the patrol-vehicle door to strike Plaintiff during transport. Plaintiff will amend this Complaint to state their true names and capacities when ascertained through discovery.

11. Defendant COUNTY OF VENTURA is a political subdivision of the State of California and the public entity responsible for the policies, customs, practices, training, supervision, and discipline of the Ventura County Sheriff's Office.

12. DOES 3 through 10 are additional unidentified peace officers, supervisors, policymakers, or custodians employed by the Ventura County Sheriff's Office whose acts or omissions contributed to the violations alleged herein, and whose true names and capacities will be added by amendment when ascertained.

IV.  FACTUAL ALLEGATIONS

13. On March 5, 2024, at approximately 10:00 a.m., Plaintiff Adrian Andrew Grimaldo was lawfully operating his motor vehicle near the intersection of Main Street and Saratoga Street in Fillmore, California, when Ventura County Sheriff's Deputy Cameron Knox initiated a traffic stop.

14. During the stop, Deputy Knox queried the California Law Enforcement Telecommunications System (CLETS) and received information regarding an outstanding out-of-county arrest warrant issued out of Siskiyou County.

4

SECOND AMENDED COMPLAINT

15. The warrant in question did not pertain to Plaintiff. It belonged to another individual whose identifying characteristics materially differed from Plaintiff's. Specifically, the warrant listed a different middle name ("Michael" rather than "Andrew") and the suspect photograph maintained by the Yreka Police Department depicted a person of a different race and body type.

16. Plaintiff immediately and repeatedly informed the arresting deputies, including Deputy Knox, that he had never been to Siskiyou County, that his middle name was Andrew, and that he was entirely the wrong person. Information confirming this mismatch was either in Defendants' immediate possession or readily accessible via mobile database queries.

17. During this roadside encounter, Plaintiff was exercising his clearly established First Amendment right to gather information by actively recording the law enforcement encounter on his mounted cellular phone.

18. Recognizing that they were being recorded, Defendant Officer Doe 1, acting under color of state law and without any lawful order, safety justification, or legitimate law-enforcement purpose, physically reached into Plaintiff's vehicle and manually powered off Plaintiff's phone. This affirmative act was executed with the specific purpose of halting and suppressing Plaintiff's active, protected recording of the encounter.

19. Following the unlawful suppression of the recording, Officer Doe 1 placed Plaintiff in handcuffs, tightening them to maximum restraint and twisting Plaintiff's arm and shoulder into an unnatural position. Plaintiff explicitly complained about the severe pain and tightness, but Officer Doe 1 ignored these complaints despite Plaintiff being entirely compliant and non-resistant.

5

SECOND AMENDED COMPLAINT

20. After Plaintiff was handcuffed and placed into the patrol vehicle, Officer Doe 2 intentionally slammed the patrol vehicle door on Plaintiff with substantial force, causing further physical trauma while Plaintiff was restrained.

21. Furthermore, at the scene of the arrest, Officer Doe 1 searched Plaintiff's vehicle and wallet without probable cause, consent, or any other lawful basis. During this search, approximately $300 in cash belonging to Plaintiff was seized. When Plaintiff's property was inventoried upon his eventual release, the jail property receipt reflected possession of only $27.00, leaving approximately $273 unaccounted for.

22. Plaintiff was subsequently transported to the Ventura County Pretrial Detention Facility. At the facility, standard identity-verification safeguards—including the Automated Fingerprint Identification System (AFIS), LiveScan fingerprint comparison, and physical-descriptor comparison—identified obvious discrepancies between Plaintiff and the warrant subject.

23. Rather than verifying Plaintiff's identity and releasing him, Defendant Senior Deputy Jeff Oswald actively instructed Deputy Knox on how to manually bypass and override the booking system's identity verification safeguards.

24. Acting on Senior Deputy Oswald's instructions, Deputy Knox remained at the booking computer for a prolonged period, manually forcing Plaintiff into the booking system as the warrant subject, despite Plaintiff's ongoing protests that he was misidentified.

SECOND AMENDED COMPLAINT

25. During this detention, Plaintiff was moved through several holding cells. An unidentified escorting officer repeatedly and forcefully slammed heavy cell doors toward Plaintiff's face, subjecting Plaintiff to punitive conditions of confinement that caused severe, systemic migraines.

26. The manual override of the booking system resulted in Plaintiff being unlawfully held in custody for approximately 6.5 hours. He was finally released at approximately 4:24 p.m. only after Defendant Oswald obtained records from the Yreka Police Department formally confirming that the suspect's photograph, race, and body type did not match Plaintiff, prompting the issuance of a "Notice of Warrant Misidentification."

27. The unconstitutional biometric override executed by Deputy Knox and Senior Deputy Oswald was not an isolated incident, but the result of a longstanding custom, practice, and failure to train by Defendant County of Ventura.

28. Defendant County of Ventura possessed actual notice of the specific risk of mistaken-identity incarcerations. In the 2010 class action *Velasquez v. County of Ventura* (No. 2:10-cv-10080-CBM-PJW), the County admitted in discovery to booking ninety-seven (97) individuals as the "wrong person selected" from December 2008 forward. *[RECORD CITE: Velasquez v. County of Ventura, Joint Stipulation of Issues in Dispute on Plaintiff's Motion to Compel, Dkt. 20, Response to Interrogatory No. 1 (C.D. Cal. June 17, 2011).]*

29. To resolve the *Velasquez* action, the County entered into a court-approved settlement on July 10, 2012, committing to strict injunctive relief measures, specifically mandates requiring the use of biometric identity verification to prevent name-based booking errors. *[RECORD CITE: Velasquez v. County of*

SECOND AMENDED COMPLAINT

*Ventura, No. 2:10-cv-10080-CBM-PJW, Order on Joint Motion for Final Approval, Dkt. 54 (C.D. Cal. July 10, 2012).]*

30. Despite these federal court mandates, the County acted with deliberate indifference by failing to train its personnel and failing to enforce these biometric safeguards, directly leading to the manual override that caused Plaintiff's unconstitutional detention on March 5, 2024.

31. Finally, after Plaintiff's release, Ventura County failed to timely update CLETS and related law-enforcement databases to reflect the resolved misidentification. Despite Plaintiff repeatedly contacting the County between March and September 2024, the erroneous information was not fully cleared from his criminal history until approximately September 18, 2024.

32. As a direct, proximate, and foreseeable consequence of the County's failure to timely clear the erroneous warrant data from Plaintiff's record, Plaintiff suffered a concrete deprivation of property and privileges, specifically culminating in the formal denial of a permit application by the County, causing tangible, ongoing professional and financial harm.

SECOND AMENDED COMPLAINT

V.  CLAIMS FOR RELIEF

COUNT I

FOURTH AND FOURTEENTH AMENDMENTS  — UNLAWFUL CONTINUED DETENTION

(42 U.S.C. § 1983 — Against Defendants Oswald and Knox)

33. Plaintiff incorporates by reference each and every preceding paragraph of this Second Amended Complaint as though fully set forth herein.

34. The Fourth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits unreasonable seizures, including the continued detention of an individual after readily-available identifying information demonstrates that the basis for the seizure no longer exists. The Fourteenth Amendment Due Process Clause separately prohibits the continued detention of a person on a warrant when reasonably-available identifying information demonstrates that the detainee is not the person named in the warrant.

35. At the time of Plaintiff's booking, AFIS fingerprint records, photograph comparisons, date-of-birth verification, and physical-descriptor comparators were available to Defendants and would have demonstrated that Plaintiff was not the individual identified in the warrant.

36. Defendant Oswald instructed Defendant Knox to manually bypass the booking system's automated identity-verification safeguards. Defendants Oswald and Knox acted unreasonably, with deliberate indifference, or both, by bypassing or failing to use those identity-verification safeguards, overriding system alerts, and

9

SECOND AMENDED COMPLAINT

continuing to process Plaintiff's booking and detention as if he were the warrant subject — notwithstanding Plaintiff's verbal protests of misidentification.

37. As a direct and proximate result of Defendants' conduct, Plaintiff was detained without probable cause and deprived of liberty in violation of the Fourth and Fourteenth Amendments.

38. The constitutional principles set forth above were clearly established at the time of Plaintiff's March 5, 2024 booking. Any reasonable booking official in Defendants' position would have known that bypassing, ignoring, or overriding available identity-verification safeguards in the face of an arrestee's protests of misidentification violated clearly-established constitutional rights. Defendants are therefore not entitled to qualified immunity.

39. Plaintiff has suffered general and special damages in an amount to be proven at trial, including loss of liberty, mental and emotional distress, humiliation, and other harm.

COUNT II
FOURTH AMENDMENT  —  EXCESSIVE FORCE
(42 U.S.C. § 1983 — Against Defendants Doe 1 and Doe 2)

40. Plaintiff incorporates by reference each and every preceding paragraph of this Second Amended Complaint as though fully set forth herein.

41. The Fourth Amendment prohibits the use of excessive force by law-enforcement officers during the course of an arrest, investigatory stop, or other seizure.

10

SECOND AMENDED COMPLAINT

42. Defendant Doe 1 used excessive and objectively unreasonable force by applying handcuffs to Plaintiff with crushing tightness, refusing to loosen them despite Plaintiff's complaints, and maintaining that excessive pressure when there was no legitimate law-enforcement justification for doing so.

43. Defendant Doe 2 used excessive and objectively unreasonable force by causing the patrol-vehicle door to strike Plaintiff with substantial force while Plaintiff was already restrained, compliant, and not resisting, when there was no legitimate law-enforcement justification for the use of force.

44. The conduct of Defendants Doe 1 and Doe 2 was objectively unreasonable in light of clearly-established law, and neither is entitled to qualified immunity.

45. As a direct and proximate result of Defendants Doe 1 and Doe 2's conduct, Plaintiff suffered physical injury, pain, mental and emotional distress, and other damages in an amount to be proven at trial.

COUNT III
FOURTH AMENDMENT — UNREASONABLE SEARCH AND SEIZURE
(42 U.S.C. § 1983 — Against Defendant Doe 1)

46. Plaintiff incorporates by reference each and every preceding paragraph of this Second Amended Complaint as though fully set forth herein.

47. The Fourth Amendment prohibits unreasonable searches and seizures of a person's vehicle or personal effects that are not supported by a warrant, probable cause, consent, or another recognized exception to the warrant requirement.

11

SECOND AMENDED COMPLAINT

48. Defendant Doe 1 searched Plaintiff's vehicle and wallet without a warrant, without probable cause, without Plaintiff's consent, and beyond the scope of any permissible search incident to arrest or inventory search.

49. During this unlawful search, Defendant Doe 1 unlawfully seized several hundred dollars in cash from Plaintiff's wallet, permanently depriving Plaintiff of his property without due process of law.

50. Defendant Doe 1's conduct was objectively unreasonable in light of clearly-established law, and he is not entitled to qualified immunity.

51. As a direct and proximate result of Defendant Doe 1's unreasonable search and unlawful seizure, Plaintiff was deprived of his Fourth Amendment rights, suffered direct financial loss, and suffered damages in an amount to be proven at trial.

COUNT IV

FIRST AMENDMENT — DIRECT INTERFERENCE WITH RIGHT TO RECORD

(42 U.S.C. § 1983 — Against Defendant Doe 1)

52. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

53. The First Amendment protects the right of a private citizen to gather information about government officials and to record law-enforcement officers performing their official duties in a public place. This right was clearly established in the Ninth Circuit at the time of the events alleged. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995).

SECOND AMENDED COMPLAINT

54. During the traffic stop on March 5, 2024, Plaintiff was using his cellular telephone to make a live audiovisual recording of the deputies' conduct in a public space, a lawful exercise of his clearly established First Amendment rights.

55. While Plaintiff was actively recording, Defendant Doe 1 reached into Plaintiff's vehicle and manually powered off Plaintiff's cellular telephone, effectively terminating the recording. Doe 1's purpose was to halt and suppress Plaintiff's protected recording of the encounter.

56. Doe 1's affirmative physical act directly interfered with and suppressed Plaintiff's exercise of his clearly established First Amendment right to record. The termination of the recording served no legitimate law-enforcement purpose, was not a reasonable time, place, or manner restriction, and would deter a person of ordinary firmness from continuing to exercise their constitutional rights.

57. In the alternative, Doe 1 powered off the phone in retaliation for Plaintiff's protected activity, which was a substantial or motivating factor in his conduct.

58. As a direct and proximate result, Plaintiff was deprived of his First Amendment rights and suffered injury, including the suppression and loss of the recording, according to proof.

SECOND AMENDED COMPLAINT

COUNT V

MUNICIPAL LIABILITY UNDER MONELL FOR UNCONSTITUTIONAL CUSTOM AND FAILURE TO TRAIN OR SUPERVISE

(42 U.S.C. § 1983 — Against Defendant County of Ventura)

59. Plaintiff incorporates by reference each and every preceding paragraph of this Second Amended Complaint as though fully set forth herein.

60. Defendant County of Ventura is a municipal entity subject to suit under 42 U.S.C. § 1983. At all relevant times, the Sheriff of Ventura County was the final policymaking authority for the County with respect to the operation of the County jail, including the policies, customs, training, and supervision that govern how persons are identified, booked, and detained as the subjects of arrest warrants.

61. At all relevant times, the County maintained a custom and practice under which deputies and booking personnel bypassed, overrode, or circumvented available biometric identity verification safeguards in order to book and detain individuals as the subjects of warrants whom those individuals did not match. This practice was sufficiently longstanding, permanent, and well-settled to constitute the standard operating procedure of the County jail.

62. The operation of this custom is shown by the conduct of County personnel during Plaintiff's own booking. After Plaintiff informed deputies that he was not the person named in the warrant, Deputy Knox spent a prolonged period working at the booking computer and openly asked four or five other deputies, including Senior Deputy Oswald, how to override the system so that Plaintiff could be entered and held as the warrant subject he did not match. Senior Deputy Oswald responded by instructing Deputy Knox on how to execute the override.

SECOND AMENDED COMPLAINT

63. That a line deputy openly sought instruction on how to override the identity verification system, that several deputies were available within the jail to be asked, and that a supervising deputy supplied the method on request, shows that overriding the safeguard was a known, available, and accepted procedure within the County jail rather than the isolated act of a single employee.

64. The County had actual notice, years before Plaintiff's detention, that its booking personnel were detaining misidentified persons as the subjects of warrants because the County failed to use readily available means of identification. In *Velasquez v. County of Ventura*, No. 2:10-cv-10080-CBM-PJW (C.D. Cal.), a class action filed in 2010, the plaintiff alleged that the County booked and held innocent persons on warrants meant for others, despite possessing fingerprint, booking, photographic, and database information that would have shown the mistake.

65. In its own discovery responses in that action, the County queried its records and identified ninety-seven (97) individuals who, during the period from December 30, 2008 forward, were recorded under the booking dispositions "booked in error" or "wrong person selected," the latter category describing a person booked as the wrong subject of a warrant. *[RECORD CITE: Velasquez v. County of Ventura, Joint Stipulation of Issues in Dispute on Plaintiff's Motion to Compel, Dkt. 20, Response to Interrogatory No. 1 (C.D. Cal. June 17, 2011).]*

66. The County resolved the *Velasquez* action through a class settlement under which the County funded the claims of former prisoners who established that they had been booked into a County jail based solely on a warrant intended for another person. The County thereby acknowledged, and paid money to resolve, the existence of a class of persons subjected to the very practice that later caused

SECOND AMENDED COMPLAINT

Plaintiff's detention. *[RECORD CITE: Velasquez v. County of Ventura, No. 2:10-cv-10080-CBM-PJW, Order on Joint Motion for Final Approval, Dkt. 54 (C.D. Cal. July 10, 2012).]*

67. Despite this actual notice, and despite settling and paying claims arising from the identical practice, the County failed to adopt or enforce policies, training, or supervision sufficient to prevent its personnel from booking and detaining misidentified persons as the subjects of warrants. The override of identity verification safeguards during Plaintiff's 2024 booking, supplied on request by a supervising deputy as a known method, shows that the unconstitutional practice persisted and that the County remained deliberately indifferent to the known and obvious risk that innocent persons would be wrongfully booked and detained.

68. In the alternative and in addition, the County failed to train and supervise its deputies and booking personnel in the use of available identity verification methods, and failed to train and supervise them against overriding those methods to book a person as the subject of a warrant he does not match. In light of the County's prior notice described above, the need for such training and supervision was obvious, and the County's failure to provide it amounted to deliberate indifference to the constitutional rights of persons in Plaintiff's position.

69. The County's custom, and its failure to train and supervise, were each a moving force behind the violation of Plaintiff's constitutional rights. But for the practice of overriding identity verification safeguards, and the County's failure to train and supervise against that practice, Plaintiff would not have been booked and held as the subject of a warrant that named another person.

SECOND AMENDED COMPLAINT

70. As a direct and proximate result of the County's custom and of its failure to train and supervise, Plaintiff suffered injury, including wrongful detention, loss of liberty, physical injury, emotional distress, and other damages according to proof.

VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

a.  Compensatory damages in an amount to be proven at trial, including damages for loss of liberty, physical injury, property deprivation, pain and suffering, mental and emotional distress, humiliation, and other harm;

b.  Punitive damages against the individual Defendants (Knox, Oswald, Doe 1, and Doe 2) in their individual capacities, in an amount to be proven at trial;

c.  Declaratory and injunctive relief, including an order directing Defendant County of Ventura to promptly update CLETS and related law-enforcement teletype networks to reflect Plaintiff's resolved misidentification and to implement corrective training and policy reforms regarding booking safeguard adherence;

d.  Reasonable attorney's fees and costs as available under 42 U.S.C. § 1988 (in the event Plaintiff retains counsel) and recoverable costs of suit;

e.  Pre- and post-judgment interest as allowed by law; and

f.  Such other and further relief as this Court deems just and proper.

17

SECOND AMENDED COMPLAINT

VII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: 6/30/2026

                              Respectfully submitted,


                              /s/ Adrian Andrew Grimaldo

                              Adrian Andrew Grimaldo

                              Plaintiff in Pro Per

                              427 3rd Street

                              Fillmore, CA 93015

                              (805) 921-6927

                              AAGrimaldo@gmail.com

SECOND AMENDED COMPLAINT