

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADRIAN ANDREW GRIMALDO,<br><br>Plaintiff,<br>v.<br><br>DEPUTY CAMERON KNOX, ET AL.,<br><br>Defendants. | No. 2:26-cv-02299-JFW-AJR<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable John F. Walter, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.
## INTRODUCTION

On March 4, 2026, *pro se* Plaintiff Adrian Andrew Grimaldo ("Plaintiff") filed a Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (the "Complaint"), arising from an alleged false arrest and detention based on out-of-county warrants issued for another individual. (Dkt. 1.) Plaintiff originally named Ventura County Sheriff's

Deputy Cameron Knox, Senior Deputy Jeff Oswald, Yreka Police Department Supervisor Janene Kincade, and Yreka Police Department Lieutenant Ray Boutin, all sued in their official capacities. (Dkt. 1 at 2-3.) On April 27, 2026, the Court dismissed the Complaint with leave to amend for various pleading deficiencies. (Dkt. 10.)

On May 26, 2026, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. 12.) In the FAC, Plaintiff no longer sued Yreka Police Department personnel and instead named Ventura County Sheriff's Deputy Cameron Knox, Senior Deputy Jeff Oswald, both sued in their individual capacities, Officer Doe 1, Officer Doe 2, County of Ventura, and Does 3 through 10 as Defendants (collectively, "Defendants"). (Id. at 1, 3-4.) Based on these allegations, Plaintiff asserted five claims for relief for: (1) unlawful continued detention in violation of the Fourth and Fourteenth Amendments against Defendants Knox and Oswald (Claim One); (2) excessive force in violation of the Fourth Amendment against Defendants Doe 1 and Doe 2 (Claim Two); (3) unreasonable search and seizure in violation of the Fourth Amendment against Defendant Doe 1 (Claim Three); (4) First Amendment retaliation and interference with Plaintiff's alleged right to record law-enforcement activity against Defendant Doe 1 (Claim Four); and (5) municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) against Defendant County of Ventura (Claim Five). (Id. at 9-15.) On June 8, 2026, the Court dismissed Claims Four and Five of the FAC with leave to amend for failure to state a claim, concluding that Plaintiff had sufficiently alleged Claims One through Three. (Dkt. 14.)

On June 30, 2026, Plaintiff filed the operative Second Amended Complaint ("SAC") against the same Defendants. (Dkt. 16.) The SAC reasserts all five claims for relief and includes additional factual allegations intended to cure the pleading deficiencies previously identified with respect to Claims Four and Five. (Id.)

## II.

## PLAINTIFF'S ALLEGATIONS IN THE SAC

In the SAC and attached exhibits, Plaintiff alleges that on March 5, 2024, he was lawfully traveling in his vehicle near the intersection of Main Street and Saratoga Street in Fillmore, California, when Ventura County Sheriff's Deputy Cameron Knox initiated a traffic stop. (Dkt. 16 at ¶¶ 1, 2, 13.) Plaintiff acknowledges that the initial traffic stop and field arrest were supported by an apparent dispatch "hit" regarding an outstanding out-of-county arrest warrant issued by Siskiyou County and does not challenge the initial stop itself. (Id. at ¶ 2.) Rather, Plaintiff alleges that the constitutional violations arose from Defendants' conduct after the arrest, including the alleged use of excessive force, an unlawful search of Plaintiff's vehicle and wallet, interference with Plaintiff's attempt to record the encounter, the alleged bypass of Ventura County's booking identity-verification procedures, and the County's alleged failure to timely update law enforcement databases following Plaintiff's release. (Id. at ¶ 2.)

Specifically, Plaintiff alleges that the outstanding warrant did not pertain to him but instead belonged to another individual whose identifying characteristics materially differed from Plaintiff's, including a different middle name, race, and body type. (Id. at ¶ 15.) Plaintiff alleges that he repeatedly informed Defendant Knox that he had never been to Siskiyou County, that his middle name was "Andrew," and that he was not the individual identified in the warrant. (Id. at ¶ 16.) Plaintiff further alleges that this information was readily available to Defendants through law enforcement databases. (Id.)

Plaintiff alleges that while he was attempting to record the encounter on his cellular phone, Defendant Doe 1 intentionally reached into Plaintiff's vehicle and powered off Plaintiff's phone to prevent him from recording the interaction. (Id. at ¶ 18.) Plaintiff further alleges that Defendant Doe 1 handcuffed Plaintiff with excessive force despite Plaintiff's compliance and complaints that the handcuffs

3

were causing severe pain.  (Id. at ¶ 19.)  Plaintiff also alleges that Defendant Doe 2 intentionally caused the patrol vehicle door to strike Plaintiff after he had been placed inside the patrol vehicle.  (Id. at ¶ 20.)

Plaintiff further alleges that Defendant Doe 1 searched Plaintiff's vehicle and wallet without probable cause, consent, or other lawful justification and that approximately $273 in cash was missing after Plaintiff's release from custody.  (Id. at ¶ 21.)  Plaintiff additionally alleges that while being transferred through the Ventura County Pretrial Detention Facility, unidentified officers repeatedly slammed heavy holding-cell doors toward Plaintiff, causing him to suffer severe migraines. (Id. at ¶ 25.)

According to Plaintiff, after he was transported to the Ventura County Pretrial Detention Facility, standard booking procedures, including Automated Fingerprint Identification System ("AFIS") comparisons, Live Scan fingerprint verification, photograph comparisons, and physical-descriptor comparisons, identified obvious discrepancies between Plaintiff and the warrant subject.  (Id. at ¶ 22.)  Plaintiff alleges that despite these discrepancies, Defendant Senior Deputy Jeff Oswald instructed Defendant Knox to manually override or bypass the booking system's identity-verification safeguards and continue processing Plaintiff as the warrant subject.  (Id. at ¶¶ 23-24.)  Plaintiff alleges that he remained in custody for approximately 6.5 hours before Defendant Oswald ultimately obtained records from the Yreka Police Department confirming that Plaintiff was not the individual named in the warrant and issued a Notice of Warrant Misidentification.  (Id. at ¶ 26.)

Plaintiff also alleges that the County maintained a longstanding custom, policy, or practice of permitting deputies to bypass biometric identity-verification safeguards, failed to adequately train and supervise deputies regarding mistaken-identity arrests and bookings, and failed to timely update the California Law Enforcement Telecommunications System ("CLETS") and related law enforcement databases after Plaintiff's release.  (Id. at ¶¶ 27, 30-32.)  Plaintiff further alleges that

4

Ventura County had actual notice of recurring mistaken-identity detentions through prior litigation, including Velasquez v. Cnty. of Ventura, et al., No. 2:10-cv-10080-CBM-PJW (C.D. Cal. Dec. 30, 2010),[1] and nevertheless acted with deliberate indifference by failing to enforce court-ordered biometric identification safeguards designed to prevent erroneous bookings.  (Id. at ¶¶ 28-30.)

## III.

## STANDARD OF DISMISSAL OF *PRO SE* COMPLAINT

Under Federal Rule of Civil Procedure 12(b)(6), a trial court may dismiss a claim *sua sponte* "where the claimant cannot possibly win relief."  Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987); see also Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (*per curiam*) (adopting the Ninth Circuit's position in Omar and noting that such a *sua sponte* dismissal "is practical and fully consistent with plaintiff's rights and the efficient use of judicial resources").  The Court's authority in this regard includes *sua sponte* dismissal of claims against defendants who have not been served and defendants who have not yet answered or appeared.  See Abagnin v. AMVAC Chem. Corp., 545 F.3d 733, 742-43 (9th Cir. 2008); see also Reunion, Inc. v. F.A.A., 719 F. Supp. 2d 700, 701 n.1 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants have not appeared and filed a motion to dismiss is no bar to the court's consideration of dismissal of the claims against them for failure to state a claim upon which relief can be granted, given that a court may dismiss any complaint *sua sponte* for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).").

Moreover, when a plaintiff appears *pro se* in a civil rights case, the court must

---

[1] The Court takes judicial notice of relevant filings in this case.  See Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that court may take judicial notice of and consider "documents on file in federal or state courts"); see also Fed. R. Civ. P. 201(b).

5

construe the pleadings liberally and afford the plaintiff the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir. 1988).  In giving liberal interpretation to a *pro se* complaint, the court may not, however, supply essential elements of a claim that were not initially pled.  See Pena v. Gardner, 976 F.2d 469, 471-72 (9th Cir. 1992).  A court must give a *pro se* litigant leave to amend the complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."  Karim-Panahi, 839 F.2d at 623 (internal quotation marks omitted).

For the reasons set forth below, the Court finds that Plaintiff has cured the deficiencies previously identified with respect to Claim Four.  However, despite the additional factual allegations contained in the SAC, Plaintiff again fails to state a plausible Monell claim against Defendant County of Ventura.  Because Plaintiff has already been afforded an opportunity to amend after receiving detailed guidance regarding the deficiencies in his municipal liability, and further leave to amend would be futile, the Court recommends that Claim Five be DISMISSED WITHOUT LEAVE TO AMEND.  The Court further recommends that this action proceed on Claims One through Four against the remaining Defendants.

## IV.

## DISCUSSION

A.  **Plaintiff Fails To State A Claim For Municipal Liability Under *Monell* Against Defendant Ventura County (Claim Five).**

Plaintiff's fifth claim seeks to impose municipal liability against Defendant County of Ventura under Monell.  (Dkt. 16 at ¶¶ 27-32.)  A municipality may not be held liable under Section 1983 solely because it employs an alleged tortfeasor.  See Connick v. Thompson, 563 U.S. 51, 60 (2011); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981).  This means that the County of Ventura cannot be sued simply because some officers allegedly violated

6

Plaintiff's constitutional rights.  Instead, the County of Ventura may be held liable **only if the alleged wrongdoing was committed pursuant to a municipal policy, custom, or usage**.  See Bd. of Cnty. Comm'r of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 402-04 (1997); Monell v. N.Y. Cty. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978) ("Monell"); see also Horton by Horton v. Cty. of Santa Monica, 915 F.3d 592, 603-04 (9th Cir. 2019) ("[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to . . . a pervasive practice or custom.").

A plaintiff seeking to impose liability on a municipality under Monell must allege facts showing that:  (1) the constitutional violation was the result of a governmental policy or a longstanding practice or custom; (2) the individual who committed the constitutional violation was an official with final policy-making authority; or (3) an official with final policy-making authority ratified the unconstitutional act.  See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  Additionally, liability under Monell may not be predicated on "isolated or sporadic incidents," but "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Gordon v. Cnty. of Orange, 6 F.4th 961, 974 (9th Cir. 2021).

Here, Plaintiff alleges that Ventura County maintained a "longstanding custom, policy, [and] practice" of permitting deputies to bypass biometric identity-verification safeguards during the booking process.  (Dkt. 16 at ¶ 27.)  Plaintiff further alleges that Ventura County failed to adequately train and supervise Sheriff's personnel regarding mistaken-identity arrests.  (Id. at ¶ 30.)  Plaintiff also alleges that Ventura County failed to timely update the CLETS following resolved warrant misidentifications and acted with deliberate indifference despite notice of prior mistaken-identity detentions.  (Dkt. 16 at ¶ 31.)  Plaintiff relies on prior class action litigation against Ventura County in Velasquez v. Cnty. of Ventura, et al., No. 2:10-

cv-10080-CBM-PJW (C.D. Cal. Dec. 30, 2010),[2] alleging that the County had actual notice of recurring mistaken-identity detentions and agreed to implement biometric identification safeguards pursuant to a court-approved settlement.  (Id. at ¶¶ 28-29.)  Although these allegations are more detailed than those contained in the FAC, Plaintiff nevertheless fails to plausibly allege municipal liability under Monell.

First, Plaintiff fails to plausibly allege the existence of an unconstitutional municipal policy or longstanding custom.  Indeed, Plaintiff's own allegations establish that Ventura County adopted biometric identity-verification procedures following the Velasquez settlement.  Plaintiff's theory is not that Ventura County maintained an official policy directing deputies to ignore those safeguards, but rather that Defendants Knox and Oswald failed to follow them during Plaintiff's booking.  Even accepting those allegations as true, they describe misconduct by individual officers allegedly acting contrary to existing County procedures, not pursuant to an official County policy or longstanding custom.  Allegations that County employees failed to follow established procedures do not, without more, establish municipal liability under Monell.  See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (holding that Monell "[l]iability for improper custom may not be predicated on isolated or sporadic incidents"); see also Meehan v. Los Angeles Cnty., 856 F.2d 102, 107 (9th Cir. 1988) ("Proof of unconstitutional assaults by SEB agents . . . standing alone, does not support a finding of liability against the County."); City of Okla. v. Tuttle, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell . . . .").

Second, Plaintiff's reliance on the Velasquez litigation does not plausibly establish that Ventura County maintained an unconstitutional policy in March 2024.

---

[2] The Court takes judicial notice of relevant filings in this case.  See Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that court may take judicial notice of and consider "documents on file in federal or state courts"); see also Fed. R. Civ. P. 201(b).

Rather, Plaintiff alleges that Ventura County settled prior litigation involving mistaken-identity detentions and agreed to implement additional biometric safeguards to prevent future erroneous bookings.  (Dkt. 16 at ¶¶ 28-29.)  Those allegations show that Ventura County adopted corrective measures in response to prior litigation, not that County policymakers later maintained a policy encouraging deputies to disregard those procedures.  Plaintiff alleges no specific fact showing that County policymakers knowingly permitted deputies to routinely disregard those safeguards or otherwise maintained a widespread practice of ignoring the settlement requirements.

Third, Plaintiff likewise fails to plausibly allege deliberate indifference sufficient to support a failure-to-train theory.  A municipality may be liable for failure to train only where deficient training reflects deliberate indifference to a known or obvious risk of constitutional injury.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Connick, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.").  To plausibly state such a claim, a plaintiff must allege facts showing that County policymakers had  "actual or constructive notice" of the training deficiency, that the failure to train reflected "a conscious choice by the government," and that the deficiency caused the alleged constitutional deprivation.  See Kirkpatrick v. Cnty. of Washoe, 843 F.3d 784, 793-94 (9th Cir. 2016) (internal quotation marks omitted).  Here, Plaintiff identifies no specific deficiency in Ventura County's training program, no pattern of similar constitutional violations occurring after implementation of the biometric safeguards, and no fact plausibly showing that County policymakers consciously disregarded a known need for additional training.  Instead, Plaintiff asks the Court to infer the existence of a constitutionally deficient training program solely from the individual deputies' alleged misconduct during Plaintiff's arrest and booking.  Such allegations are insufficient to plausibly establish deliberate indifference or municipal liability under Monell.

9

Fourth, Plaintiff fails to plausibly allege municipal liability under a ratification theory.  Plaintiff alleges that Defendant Oswald instructed Defendant Knox to override the booking safeguards.  (Dkt. 16 at ¶ 23.)  However, Plaintiff alleges no fact showing that Oswald possessed final policymaking authority for Ventura County or that any County official with final policymaking authority approved or ratified the challenged conduct.  An employee's authority to supervise subordinates or exercise discretion in carrying out official duties does not, without more, establish final policymaking authority for purposes of Monell.  See Gillette, 979 F.2d at 1346-47 (explaining that municipal ratification requires "an official with final policy-making authority [to] ratify[y] a subordinate's unconstitutional decision or action and the basis for it."); Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (same); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (explaining that "the mere exercise of discretion by an employee," without more, does not establish final policymaking authority).

Finally, Plaintiff's allegations concerning Ventura County's alleged failure to timely update CLETS likewise fail to establish municipal liability.  Plaintiff alleges that the County delayed updating law-enforcement databases following his release, thereby exposing him to the possibility of future mistaken arrests.  (Dkt. 16 at ¶ 31.) However, Plaintiff does not allege that he was subsequently rearrested, detained, or otherwise deprived of a constitutional right as a result of the allegedly delayed updates.  More fundamentally, Plaintiff does not plausibly allege that the purported delay caused the constitutional injuries arising from his March 5, 2024 arrest and detention.  By Plaintiff's own allegations, Ventura County failed to update CLETS only after Plaintiff had been released and the alleged constitutional violations had already occurred.  Because the purported database delay postdated the events giving rise to this action, it could not have been the cause of Plaintiff's alleged constitutional injuries.  Accordingly, Plaintiff fails to plausibly allege that the alleged CLETS delay was the "moving force" behind any constitutional violation at issue in

10

this action.  See Bryan Cnty., 520 U.S. at 404 (explaining that a plaintiff must establish a direct causal link between the challenged municipal policy or custom and the alleged constitutional injury such that the policy is the "moving force" behind the constitutional violation).

Accordingly, even accepting the SAC's additional factual allegations as true, Plaintiff fails to plausibly allege that any official county policy, longstanding custom, deliberately indifferent failure to train, policymaker decision, or ratification was the moving force behind the alleged constitutional violations.  Instead, the SAC continues to allege, at most, unconstitutional conduct by individual deputies during Plaintiff's arrest and booking.  Such allegations are insufficient to impose municipal liability under Monell against the County of Ventura.

Unlike the FAC, Plaintiff has already been afforded an opportunity to amend after receiving detailed guidance regarding the deficiencies in his Monell claim.  The SAC adds allegations concerning the Velasquez litigation and settlement obligations, biometric safeguards, failure to train, and delayed CLETS updates.  Even liberally construed, however, those additional allegations still fail to plausibly establish municipal liability.  Because Plaintiff has now alleged all facts he appears able to assert in support of his Monell theory, further leave to amend would be futile.  See Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (internal quotation marks and brackets omitted)); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").

\\

\\

11

## V.

## RECOMMENDATION

IT IS RECOMMENDED that the District Court issue an Order:  (1) accepting and adopting this Report and Recommendation; (2) DISMISSING WITHOUT LEAVE TO AMEND Plaintiff's Fifth Claim for relief for municipal liability under Monell against Defendant County of Ventura; (3) DISMISSING Defendant County of Ventura from this action with prejudice; and (4) directing that this action proceed on Plaintiff's First, Second, Third, and Fourth Claims for relief against Defendants Cameron Knox, Jeff Oswald, Officer Doe 1, Officer Doe 2, and Does 3 through 10, as alleged in the Second Amended Complaint.

DATED:  July 27, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number. **Under Federal Rule of Civil Procedure 72(b)(2), any objection to this Report and Recommendation must be filed within fourteen (14) days**.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.